IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:10-CV-00028-RLV-DSC

| | |
|---|---|
| CHRISTOPHER ISLAR, | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND ORDER |
| FNU HICKS, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court upon Defendants FNU Barker, FNU Curtis, and FNU Hicks's Motion for Summary Judgment (Doc. 47), and Defendant FNU Caputo's Motion for Summary Judgment (Doc. 49), both timely filed on June 8, 2012.

## I. BACKGROUND

On March 4, 2010, Plaintiff Islar filed his Complaint pursuant to 42 U.S.C. § 1983 to redress the alleged deprivation by Defendants of his Eighth and Fourteenth Amendment rights. Service was timely effectuated, and on October 22, 2010, the aforementioned Defendants filed their respective Answers.[1] Defendant Caputo filed his Amended Answer on November 11, 2010.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the initial responsibility of informing the district

---

[1] Defendant FNU Pennell has failed to answer or otherwise plead, and on April 24, 2012, the Clerk of Court entered default as against him. (Doc. 37.)

1

court of the basis for its motion and identifying those portions of the record before the Court that the movant believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the event this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. Thus, the nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the Court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

During the morning hours of April 28, 2007, Plaintiff, an inmate at the Alexander Correctional Institution, was approached by Correctional Officers Caputo and Pennell for the purpose of removing and escorting Plaintiff from a recreation cage to his cell. As of this date, Plaintiff had incurred more than forty-five infractions while confined in the custody of the Division of Adult Correction ("DAC"), including thirteen incidents of disobeying an order and fourteen incidents of threatening to harm or injure staff, or assaulting or fighting staff or other persons. (Doc. 48 at 3; Doc. 48-3 at 2; Doc. 48-4 at 13–14.) Plaintiff alleges that while he

2

offered his hands to the Defendant officers for cuffing, Defendant Caputo grabbed Plaintiff's left hand and aggressively twisted it upward. (Doc. 56 at 2) (citing Plaintiff's affidavit). Plaintiff attempted to pull free and fell to the ground after Defendant Caputo released Plaintiff's waist chain. (Doc. 56 at 2–3.) Sergeant Hicks was then called to the scene.

Upon arrival, Sergeant Hicks was told that Plaintiff had attempted to pull Defendant Caputo through the cage. (Doc. 56 at 3.) Defendant Hicks allegedly made a number of assurances to Plaintiff and permitted Defendants Pennell and Caputo to complete the task of escorting Plaintiff to his cell. (Doc. 56 at 3.)

Upon returning to his cell without further incident, Plaintiff's leg restraints were removed, and Plaintiff asked nearby Defendants Curtis and Barker to get Defendant Caputo away from him; Defendants Curtis and Barker did not respond. (Doc. 56 at 3.) When Defendant Caputo reached to remove Plaintiff's waist chains, Plaintiff pulled away, feeling as if Defendant Caputo "was going to do something bad to [him]." (Doc. 56-2 at 4.) Plaintiff then repeatedly requested that other officers "get Officer Caputo away from [him]." (Doc. 56-2 at 4.) Defendant Caputo allegedly responded by aggressively pushing Plaintiff onto his bed such that Plaintiff was in a kneeling position and then slamming Plaintiff's head against the wall. (Doc. 56 at 4.) Defendants Barker and Pennell then reapplied Plaintiff's leg restraints, causing Plaintiff to fall face-down onto the bed. Defendant Caputo placed his knee on Planitiff's back and threatened to use pepper spray if Plaintiff did not lie still. Defendant Caputo then proceeded to spray Plaintiff, with much of the pepper spray directed to Plaintiff's right eye.

Plaintiff rotated his head away from the spray. Thereafter, Defendant Caputo forced with his forearm Plaintiff's head into the mattress and again sprayed Plaintiff in the right eye. Defendant Curtis on two occasions told Defendant Caputo to stop and leave the cell, but Caputo

3

continued to use force. (Doc. 56 at 6; Doc. 48-1 at 3.) Defendant Hicks, called to the scene by radio, thrice ordered Defendant Caputo to leave the cell before Caputo complied. (Doc. 56 at 6; Doc. 48-4 at 26.) Once Plaintiff calmed, Defendants Hicks and Curtis escorted Plaintiff to the decontamination shower and provided him an opportunity to wash the pepper spray from his face. (Doc. 48-1 at 3.)

Following the incident, at 10:45 a.m. that day, Nurse Janice Archer met with Plaintiff in Alexander's segregation unit and noted that Plaintiff denied any shortness of breath, was able to speak without difficulty, had redness of the skin on the side of his face and on the top of his right hand, and had abrasions on the top of his left hand, but that "[n]o nursing intervention [was] requested or needed at [that] time." (Doc. 48-5 at 3, 35.) At 1:00 p.m. the same day, Nurse Archer again met with Plaintiff and noted that his face was swollen and that his right eye was swollen shut. (Doc. 48-5 at 35.) Plaintiff was given an ice bag to decrease the swelling. Plaintiff was again examined at 2:30 p.m. Plaintiff's eye was still reported as swollen shut, and Plaintiff complained of a headache and burning sensation in his eye. Plaintiff was given 200 mg of Ibuprofen and was told that ice would be provided to be applied for two twenty-minute intervals. (Doc. 48-5 at 35.) Plaintiff was given his final examination for the day at 9:15 p.m. The report notes a slight redness of the eye, the absence of eye edema, and that Plaintiff had reported that the burning sensation had improved. (Doc. 48-5 at 35.) The following month, Plaintiff was x-rayed, and no fracture or other bone or joint abnormality was detected. (Doc. 48-5 at 16.)

Pursuant to DAC policy, this incident was investigated by a correctional staff member of the Alexander facility. It was found that Defendant Caputo used excessive force through his

4

unwarranted use of pepper spray.² (Doc. 56-12 at 13.) It was further found that the "[f]orce used by Officers Pennell, Barker and Curtis was minimal but was necessitated by the actions of Officer Caputo." (Doc. 48-4 at 17.)

## IV. ANALYSIS

The United States Supreme Court has recently reiterated that the "core judicial inquiry" in section 1983 suits alleging that corrections officers had used excessive force in violation of the Eighth Amendment is not whether a certain quantum of injury was sustained but "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)). "[T]he subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 398 (1989) (citation omitted). Nonetheless, for an inmate to prove such an excessive-force claim, "he must satisfy not only the subjective component that the correctional officers acted with a sufficiently culpable state of mind, but also the objective component that his alleged injury was sufficiently serious in relation to the need for force to establish constitutionally excessive force." *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). That is, "he must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" *Id.* (citing *Hudson*, 503 U.S. at 8). Therefore, to determine whether the use of force was wanton and unnecessary, the Court is to balance the following factors: (1) the need for

---

² The record reveals that Defendant Caputo had improperly administered pepper spray just four days prior. (*See, e.g.*, Doc. 56-12 at 9.) On April 24, 2007, Defendant Caputo sprayed through a trap door onto an inmate who was secured in his cell and in restraints, in violation of Division policies. (Doc. 56-12 at 13.)

5

application of force, (2) the relationship between that need and the amount of force used,[3] (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citations omitted). Where a "rational reaction and measured response" to inmate resistance and threats is shown, evidence of malicious and sadistic conduct will not be found. *Stanley*, 134 F.3d at 635. By contrast, repeated blows inflicted for the purpose of causing harm would be evidence of malicious and sadistic conduct. *Id.*

Additionally, as Defendants concede, correctional officers may be held directly liable under section 1983 if they refuse or fail to intervene when a constitutional violation occurs in their presence. (Doc. 48 at 16); *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). However, in order for liability to attach, the officers must have been in a position to intervene. *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

A. Conduct of Defendant Hicks

In his fourth cause of action, Plaintiff faults Defendant Hicks for not preventing Defendant Caputo from interacting with Plaintiff given his "notice" of Defendant Caputo's "susceptibility to act aggressively, angrily, and impulsively." (Doc. 57 at 8.) In support of this argument, Plaintiff notes three incidents: (1) an earlier conflict between Defendant Caputo and another correctional officer, in which Caputo physically threatened that officer and for which Caputo received a written warning, (2) a previous "negative encounter" involving "inmates' complaints about food trays[, during which] Officer Caputo refused to call Defendant Hicks

---

[3] While "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)), "[i]njury and force . . . are only imperfectly correlated," *Wilkins*, 130 S. Ct. at 1178.

when one of the other inmates requested him to," and (3) Defendant Caputo's inappropriate use of pepper spray four days prior. (Doc. 57 at 14; Doc. 56-13 at 42–43.)

The Court finds that these past events, as described by Plaintiff, are inadequate with respect to putting Defendant Hicks on notice of a sufficiently meaningful chance that Defendant Caputo would use excessive force while securing Plaintiff within his cell such that Hicks could be considered malicious and sadistic in assigning Caputo to escort Plaintiff. Therefore, Plaintiff's claim as against Defendant Hicks is dismissed.

B.  Conduct of Defendants Barker and Curtis

Plaintiff's third cause of action asserts that "[t]he actions of C.O.s Barker and Pennell, by jerking Plaintiff's feet out from under him, aided Caputo" and were done "maliciously and sadistically and for the purpose of causing Plaintiff harm." (Doc. 1 at 6.) However, the act of securing Plaintiff's feet, and in the process causing Plaintiff to drop from a kneeling to a prone position on a mattress, is simply not indicative of a malicious and sadistic mind. Plaintiff's second cause of action, brought against Defendants Barker and Pennell, is dismissed.

Therefore, if Defendant Barker is to be held liable, it must be pursuant to Plaintiff's failure-to-intervene theory: the second cause of action.[4] As Defendants concede (Doc. 48 at 16), an officer is liable for failing to protect an inmate from another officer's use of excessive force "if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002). Furthermore, "[w]hether an officer had sufficient time to intervene

---

[4] Although Plaintiff does not assert a failure-to-intervene claim against Defendant Hicks within the Complaint (Doc. 1 at 5–6), Plaintiff accuses Hicks of "fail[ing] to preemptively intervene" within his Memorandum in Opposition to Defendant Hicks's Motion for Summary Judgment. (Doc. 57 at 13.) This claim is indistinguishable from Plaintiff's fourth cause of action and so merits no independent analysis.

7

or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possible conclude otherwise." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997) (addressing excessive force in the more objective Fourth Amendment context).

Here, it is clear from the evidence that Defendants Barker and Curtis both were aware of Defendant Caputo's use of force, were in the vicinity of Plaintiff and Caputo, and were able to respond in some fashion, given Curtis twice told Caputo to step away. It is for the jury to determine the speed and length of the episode, and the reasonableness of this response. Therefore, if summary judgment cannot be granted as to the underlying excessive-force claim, summary judgment as to Plaintiff's second cause of action will be denied.

C. Conduct of Defendant Caputo

Plaintiff's first cause of action asserts that Defendant Caputo's use of force on April 28, 2007, was done maliciously and sadistically, and in violation of Plaintiffs rights under the Eighth and Fourteenth Amendments. Defendant Caputo first responds with the argument that he applied force in a good-faith effort to maintain or restore discipline and therefore that no malicious and sadistic quality can be inferred from his behavior. However, as noted in the documents relating to the correctional institution's internal investigation, three other correctional officers were present, and these officers were able to reapply restraints and had no apparent reasonable difficulty in controlling inmate Islar. (*See, e.g.*, Doc. 56-12 at 20.) Additionally, use of pepper spray at distances "closer than [three] feet may result in . . . micro-pulverized oleoresin capsicum particles penetrating and damaging eye tissue and should be considered only in an emergency situation." (Doc. 56-12 at 28–29) (quoting the Alexander Correctional Institution's policy on use of pepper spray).

8

Defendant Caputo further implies that the objective prong of Plaintiff's section 1983 claim has not been satisfied. However, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)). Plaintiff has put forth sufficient evidence to permit a reasonable jury to find that the quantity of pepper spray used was notably greater than necessary or that the mode of its application indicates a sole purpose of inflicting pain.

Finally, qualified immunity here protects no Defendant. The doctrine of qualified immunity shields officials from liability for civil damages insofar as (1) the violation of a constitutional right has been alleged and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 210 (2001). The courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In light of the Complaint's adequacy and *Shreve*, both prongs are here satisfied.

Accordingly, a reasonable jury could return a verdict for Plaintiff Islar, and Defendant Caputo's summary judgment motion cannot be granted.

## V. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants FNU Barker, FNU Curtis, and FNU Hicks's Motion for Summary Judgment (Doc. 47) be **GRANTED** in part and **DENIED** in part. Plaintiff's third and fourth causes of action, which include all claims brought against Defendant Hicks, are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant FNU Caputo's Motion for Summary

Judgment (Doc. 49) be **DENIED**.

Signed: September 10, 2012

Richard L. Voorhees
United States District Judge